### BLACK *v.* STATE

No. 40376          May 13, 1957          94 So. 2d 925

*Sams & Jolly, G. L. Lucas,* Columbus, for appellant.

*J. R. Griffin, Asst. Atty. Gen.*, Jackson, for appellee.

McGehee, C. J.

The appellant, R. K. Black, was indicted in Lowndes County for assault and battery with intent to kill and murder Jimmy R. Duncan. He was tried for the said alleged crime and convicted of simple assault and battery, and was sentenced to serve six months in the county jail and to pay a fine of $500.00.

The chief prosecuting witness, Duncan, testified that he was shot just above the knee, from the side of his leg as he was turning to run, by the defendant after the latter left the Magnolia Inn, a "beer joint" in or near Columbus in said county, got his shotgun and was returning into the room where the beer bar was located; that when the witness got up and started to shut the door, which the accused had left open in going out, he was met by the accused who shot him when they were three or four feet apart; that there had been no previous argument or difficulty between the witness and the accused; that the witness didn't even know the accused: and that no words were exchanged between them immediately prior to the shooting.

The proof further discloses that it became necessary for Duncan's leg to be amputated. It appears that the said witness was shot with a 12 guage automatic Browning shotgun, which the defendant admitted leaving the Magnolia Inn to get and bring from his car into the place where the other persons were assembled, but the accused contended that he went and got the gun to show it to one Jones and that Duncan grabbed the gun when the accused entered the room and also grabbed the accused around the neck, and that the gun was accidentally fired in a tussle over the possession of it. Duncan denied having touched either the gun or the defendant at all and testified that he was shot by the defendant when he was standing three or four feet away from him.

Wilber Yarbrough, a witness for the State, testified that he saw the defendant before he came back with the gun and that he was almost drunk. One of the defense witnesses, Jones, testified that the defendant had drunk both whiskey and beer prior to the shooting. The witness Yarbrough testified that Duncan neither touched the defendant nor the shotgun before he was shot.

Another state witness, Robert Baker, testified that the defendant and Jones "got to arguing over a check, ten

dollar check, and he got up, went to his car to get his gun and I went to call the sheriff''. This witness did not see the shooting because he was at the telephone, calling the sheriff. Both the defendant and Jones in their testimony minimized the seriousness of their argument about the check, but it is undisputed that a waitress told them to get on the outside to settle their argument.

There seems to be no explanation as to why the defendant would have shot Duncan unless he intended the shot for Jones or unless the shooting was accidental and the result of a tussle over the gun between the defendant and Duncan.

The father of the defendant testified that he went to see Duncan in the hospital and that the latter told him that when the defendant returned to the room with the shotgun that he thought that he intended to shoot someone and that he grabbed the gun and that in the tussle the gun was accidentally fired. Duncan denied having made this statement to the father of the defendant. A patient in the hospital, who had been in an automobile wreck, testified that Duncan made a similar statement to him. There was also testimony that the chief prosecuting witness had made the statement that if the defendant would make a settlement with him that he would drop the criminal prosecution.

The sheriff testified that there was an empty shell in the barrel of this automatic shotgun when it was turned over to him at the scene of the shooting. It was shown that such a shotgun is supposed to eject the empty shell after the gun has been fired, and it was further testified that if someone else had hold of the barrel of the gun at the time it was fired the shell might not be ejected.

From the substance of the foregoing testimony it will be readily seen that the question of whether or not this shooting was intentional or accidental was peculiarly

one of fact for the jury. In other words, two witnesses for the State testified positively that the defendant shot Duncan at a time when Duncan had not touched him or the gun, and another witness testified that upon seeing the defendant leave the room to go to his car to get his gun he immediately went to the telephone and called the sheriff. The sheriff came in response to that call. On the other hand, the jury had for its consideration the testimony of the defendant that Duncan met and grabbed the defendant when the latter was returning into the room where the beer bar was located and that the gun was accidentaly fired in a tussle. And immediately after the shooting, and while Duncan was prostrate on the floor the gun was left laying across his body when the defendant was leaving the scene, whereas one witness said that it was in the arms of Duncan.

We do not think that the defendant was entitled to a directed verdict in his favor and we are unable to say that the conviction was against the overwhelming weight of the evidence. We have carefully considered the other assignments of error and we do not think that either of them was well taken.

The judgment of the trial court under the verdict of the jury and the sentence is therefore affirmed.

Affirmed.

*Hall, Arrington, Ethridge* and *Gillespie, JJ.,* concur.